**HUNTER PYLE, SBN 191125**
**PAMELA KONG, SBN 220912**
SUNDEEN SALINAS & PYLE
1330 Broadway, Suite 1830
Oakland, California 94612

Telephone: (510) 663-9240
Facsimile: (510) 663-9241

hpyle@ssrplaw.com, pkong@ssrplaw.com

Attorneys for Plaintiff
ZAHRA SEDAGHATPOUR

**EDMUND G. BROWN JR.**
**TOM BLAKE, SBN 51885**
**JOHN P. DEVINE, SBN 170773**
Attorney General of the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

Telephone: (415) 703-5506
Facsimile: (415) 703-5480

tom.blake@doj.ca.gov

Attorneys for Defendants STATE OF CALIFORNIA, Actingby and through DEPARTMENT OF CALIFORNIA HIGHWAYPATROL and California Highway Patrol OFFICER J. SCHATMEIER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ZAHRA SEDAGHATPOUR,

Plaintiff,

vs.

STATE OF CALIFORNIA, a public entity; CALIFORNIA HIGHWAY PATROL, a public entity; OFFICER J. SCHATMEIER #17021; DOE OFFICER ONE; DOE OFFICER TWO; and DOES 3-20, Jointly and Severally,

Defendants.

Case No. C 07-01802 WHA

**JOINT CASE MANAGEMENT STATEMENT**

Date: July 12, 2007
Time: 11:00 a.m.
Ctrm: 9
Location United States District Court
450 Golden Gate Avenue
19th Floor
San Francisco, CA 94102

The parties to the above-captioned matter hereby submit the following joint case management statement in anticipation of the case management conference set for July 12, 2007:

## I. SUBJECT-MATTER JURISDICTION

This action is brought pursuant to 42 USC sections 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 USC sections 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

## II. CLAIMS AND DEFENSES

### A. PLAINTIFF'S CLAIMS

Plaintiff ZHARA SEDAGHATPOUR is a woman of Iranian origin. This is a civil rights action arising from Defendants' unreasonable seizure, use of excessive force, and racial and national origin discrimination against Plaintiff, on or about September 12, 2006, in Pleasanton, California.

On or about September 12, 2006, one day after the anniversary of September 11, 2001, at approximately 6:15 p.m., Plaintiff was driving southbound on I-680 in her vehicle, a red Mercedes. Plaintiff was driving at or below the posted speed limit of 65 miles per hour. Plaintiff was driving in the lane that is one lane to the right of the left lane.

Plaintiff noticed SCHATMEIER driving a California Highway Patrol sedan in the lane next to her. SCHATMEIER glared at Plaintiff. Plaintiff signaled a lane change with her blinker and changed lanes into the left lane of the freeway. SCHATMEIER followed Plaintiff into the left lane and signaled with the lights on his vehicle for Plaintiff to pull over on the freeway and stop her vehicle. Plaintiff pulled over and stopped on an area of the freeway located in Pleasanton, California.

SCHATMEIER rapped on the driver side window of Plaintiff's vehicle and indicated for Plaintiff to roll her window down. SCHATMEIER told Plaintiff to produce her driver's license and vehicle registration documents. Plaintiff complied with these commands.

Plaintiff then asked SCHATMEIER why he had stopped her. SCHATMEIER rudely stated to Plaintiff that she was speeding. Plaintiff expressed that she believed that she had not been speeding, and

asked if SCHATMEIER would forego issuing a citation.

SCHATMEIER told Plaintiff to "SHUT THE HELL UP." Plaintiff asked SCHATMEIER for his business card. SCHATMEIER refused to provide his card to Plaintiff.

SCHATMEIER then handed the citation to Plaintiff and told her to sign the citation. Plaintiff asked if she could read the contents of the citation before signing. SCHATMEIER told Plaintiff that she could not read the citation. He then began yelling at her: "YOU HAVE TO SIGN IT! I'M NOT GOING TO LET YOU READ IT. SHUT THE FUCK UP! I DON'T HAVE TIME FOR YOU FOREIGNERS TO SIT IN YOUR MERCEDES; YOU THINK YOU OWN THE ROAD! YOU THINK YOU OWN THE COUNTRY!"

Plaintiff pleaded with SCHATMEIER to allow her to review the citation before signing it. SCHATMEIER then opened the door to Plaintiff's vehicle and dragged her out of her car. Plaintiff was afraid for her physical safety. SCHATMEIER was hostile. He pushed and shoved Plaintiff up against the trunk of her car. He continued to push and jab his elbow into her.

Meanwhile, DOE OFFICER ONE arrived in a police vehicle and DOE OFFICER TWO arrived on a motorcycle. Plaintiff was crying and stated that she would sign the citation. SCHATMEIER told her that it was too late. He told Plaintiff that she had "pissed [him] off," that he had told her not to "fuck around" with him, and that he was taking her to jail.

SCHATMEIER and DOE OFFICER TWO continued to jab their elbows into Plaintiff and to twist Plaintiff's arm. SCHATMEIER and DOE OFFICER TWO restrained Plaintiff in handcuffs. Plaintiff stated to Defendants repeatedly that they were hurting her and that she was scared. Defendants SCHATMEIER and DOE OFFICER TWO both responded each time for Plaintiff to "SHUT THE FUCK UP."

Plaintiff asked, "Why are you doing this?" She also told the officers, "You're hurting me." DOE OFFICER TWO asked her if she thought they were going to pamper her. He stated that they wanted to hurt her and that "this" was about hurting her, that "that's what you get," and that they wanted her to be

scared. SCHATMEIER told Plaintiff, “WE’RE GLAD IT’S HURTING”.

Defendant DOE OFFICER TWO shouted, “YOU FUCKING BITCH!” “YOU FUCKING FOREIGNER!” SCHATMEIER then shouted “TODAY IS SEPTEMBER 12. DO YOU REMEMBER SEPTEMBER 11?” “DO YOU KNOW WHAT HAPPENED ON SEPTEMBER 11?” “IT’S PEOPLE LIKE YOU WHO KILLED OUR PEOPLE.” “THIS IS OUR COUNTRY!” “WHY DON’T YOU GO BACK TO YOUR COUNTRY?”

Plaintiff stated that she was a taxpayer. In response, SCHATMEIER told Plaintiff to “SHUT THE FUCK UP.” SCHATMEIER and DOE OFFICER TWO then forced Plaintiff toward SCHATMEIER’s vehicle. DOE OFFICER TWO shoved Plaintiff into the front passenger seat of SCHATMEIER’s vehicle with such force that Plaintiff hit her head on the top of the doorframe of the vehicle.

DOE OFFICER TWO shut the door on Plaintiff’s foot. Plaintiff pulled her foot away in pain and he slammed the door in Plaintiff’s face. DOE OFFICER TWO then touched himself and grabbed himself in a sexual manner while laughing and looking at Plaintiff.

SCHATMEIER, DOE OFFICER ONE and DOE OFFICER TWO moved away from Plaintiff. Plaintiff was crying and afraid of what would happen to her. She banged her head on the window of the vehicle to get the attention of SCHATMEIER, DOE OFFICER ONE AND DOE OFFICER TWO.

DOE OFFICER ONE opened the vehicle door and rudely asked Plaintiff what she wanted. Plaintiff asked him, “What did I do, why don’t you let me go?” He responded that he could not and shut the door.

Later, SCHATMEIER opened the door and stated that they were trying to figure out what to do with Plaintiff. He threatened to take her to jail. He then told her that they had contacted a supervisor and that it was up to his supervisor to decide what to do with Plaintiff. SCHATMEIER then slammed the door in Plaintiff’s face.

Sergeant Jim Williams then arrived with another police officer, name unknown. Sergeant

Williams spoke with SCHATMEIER, DOE OFFICER ONE and DOE OFFICER TWO. He then asked Plaintiff to tell him what happened. Plaintiff was very upset and explained what had happened to her. Sergeant Williams told SCHATMEIER to release Plaintiff.

During the entire course of the incidents alleged above, DOE OFFICER ONE observed SCHATMEIER and DOE OFFICER TWO in their treatment of Plaintiff. DOE OFFICER ONE laughed at Plaintiff. He did not take any action to curtail the actions of SCHATMEIER and DOE OFFICER TWO. Further, DOE OFFICER ONE denied Plaintiff's requests to be freed.

Plaintiff asked for the return of her driver's license and vehicle registration documents. SCHATMEIER who last had custody of the documents stated that he did not have them and that "maybe the wind blew them away." Plaintiff was unable to recover these items.

Later that evening, Plaintiff went to Washington Hospital in Fremont with her friend, Fazaneh Yassini. Plaintiff was treated for the assault, including left arm contusion, right flank contusion and right elbow pain.

**B. DEFENDANTS' DEFENSES**

Following a routine traffic stop for speeding, plaintiff refused to sign the promise to appear in court on the citation. California Highway Patrol (CHP) officers used only the minimum physical force necessary to restrain plaintiff from running into traffic or driving off. The officers did not engage in discourteous or abusive language or violate plaintiff's civil rights, and at all times acted within the scope of qualified immunity.

At about 6:20 p.m on September 12, 2006, CHP Officer Jon Schatmeier saw plaintiff's red 1994 Mercedes automobile tailgating another Mercedes on Highway I-680 near Pleasanton, California. After clocking plaintiff at about 79 miles per hour, he made a routine traffic stop. After she stopped on the shoulder of the freeway, the CHP officer went to the right front passenger window of plaintiff's car. The officer told her that he had stopped her for speeding and obtained a paper (temporary) California Driver's License and registration papers.

Plaintiff apologized for speeding, said she had been exceeding the speed limit only briefly, and said that she was rushing to pick up her daughter by 6:30 p.m. Becoming progressively more upset, she emotionally told the officer that she did not need a citation. But the officer decided that the citation should be issued and told plaintiff to remain in her car while he filled it out at the patrol car.

Plaintiff got out of her car and, standing on the freeway shoulder, pleaded with the officer not to give her a ticket. The officer instructed her to return to her car, which she eventually did. But she got out of her car again before the officer finished writing the ticket and yelled that she might as well run in front of a car because she was having such a bad day. The officer persuaded her to get back into her car and said that he soon would discuss the citation with her. When he went back to the passenger window, plaintiff became even more agitated. She excitedly demanded to know why she had been stopped, asserted that the officer could not have seen her speeding because she had not seen him, and demanded to see his patrol car's radar unit (the officer had not used one or mentioned one). The officer, speaking calmly and politely, asked her to sign the citation. She refused.

The officer explained, again in a calm manner, that signing was not an admission of guilt, only a promise to appear in court. Plaintiff said that she couldn't get a ticket because her employer would find out and she would lose her job, that she was having a terrible day, and that she didn't need it to get worse. She demanded to know the alternative to signing the promise to appear. The officer, following CHP procedure, explained the alternative (being booked) and radioed for another officer to come to the scene to persuade her to sign. Plaintiff said that Officer Schatmeier should just take her to jail because she wouldn't sign. She again made a series of statements about running in front of a car or ramming a pole to kill herself. Still sitting in the driver's seat of her car, she then asked for the paperwork so that she could leave. The officer explained that she couldn't leave without signing the citation and that another officer was on his way to talk to her.

With Officer Schatmeier leaning in the passenger window talking to her, the plaintiff turned the key and started the car. The officer leaned in, pushed her hand off the transmission lever, and shut off the ignition. As the officer was walking around the car to escort her out of the car, another CHP officer

arrived. She refused to get out. Using only minimum force, Officer Schatmeier grasped plaintiff's upper arms and removed her from the driver's seat. She resisted by flailing her arms and pulling away. Continuing to flail and resist, she was eventually handcuffed by the two officers near the rear of her car. She was put the front seat of the patrol car, and shortly thereafter a CHP sergeant arrived. While restrained in the patrol car, and after a discussion with the sergeant, plaintiff agreed to sign the citation. The CHP officers allowed her to leave after signing in view of her claimed child care problem.

As soon as she was released from physical custody, plaintiff complained of pain that she attributed to being handcuffed. The CHP personnel offered medical care, but plaintiff refused. She signed the ticket and left the scene of the traffic stop at 7:30 p.m., about one hour and ten minutes after the violation was observed.

**III. SUMMARY OF PROCEEDINGS TO DATE**

This case was filed in the United States District Court for the Northern District of California on March 29, 2007.

**IV. PENDING MOTIONS**

There are no pending motions.

**V. EXPECTED MOTION PRACTICE**

Plaintiff does not anticipate filing dispositive motions in this case.

Defendants may file a dispositive motion after appropriate discovery has been conducted.

**VI. NEW PARTIES**

Plaintiff has informed counsel for Defendants that she intends to move to amend the Complaint to add the true names of DOE OFFICER ONE and DOE OFFICER TWO when these names are provided to her by Defendants. Defendants' counsel has agreed to provide appropriate discovery to Plaintiff's counsel.

**VII. EVIDENTIARY, CLAIM-CONSTRUCTION, AND CLASS CERTIFICATION HEARINGS**

Not applicable.

**VIII. EVIDENCE PRESERVATION**

The Parties have complied with paragraph four of the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases before Judge William Alsup.

**IX. DISCOVERY LIMITS**

The parties propose discovery according to code (25 interrogatories, including subparts; unlimited requests for production and requests for admission) and up to ten depositions per side, subject to further stipulation or showing of good cause if, based on discovery conducted within these limits, the parties reasonably believe additional discovery is necessary.

**X. PROPOSED TRIAL DATE**

The parties propose a trial date in April 2008, and request that the pretrial dates be determined according to the Court's preferred intervals based upon the trial date.

**XI. JURY DEMAND**

Both parties timely demanded a jury trial in this matter.

**XII. RELIEF SOUGHT**

Plaintiff seeks the following damages in this case: economic damages for lost wages, non-economic damages for emotional distress, and attorneys' fees.

**XIII. ADR PLAN**

The parties have not been able to agree on a form of ADR. The parties have requested a telephone conference with the ADR Coordinator in order to resolve this impasse.

**XIV. MAGISTRATE JUDGE**

Defendants have objected to the assignment of this matter to a Magistrate Judge.

**XV. SERVICE LIST**

For Plaintiff:

HUNTER PYLE, SBN 191125
PAMELA KONG, SBN 220912
SUNDEEN SALINAS & PYLE
1330 Broadway, Suite 1830
Oakland, California 94612

Telephone: (510) 663-9240
Facsimile: (510) 663-9241

For Defendants:

EDMUND G. BROWN JR.
TOM BLAKE, SBN 51885
JOHN P. DEVINE, SBN 170773
Attorney General of the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

Telephone: (415) 703-5506
Facsimile: (415) 703-5480

Respectfully submitted,

Dated: July 3, 2007

SUNDEEN SALINAS & PYLE

By:_/S/____________________
Hunter Pyle

Attorneys for Plaintiff
ZAHRA SEDAGHATPOUR

Dated:July 3, 2007

ATTORNEY GENERAL OF THE STATE OF CALIFORNIA

By:_/S/____________________
TOM BLAKE

Attorneys for Defendants
STATE OF CALIFORNIA,
acting by and through
DEPARTMENT OF CALIFORNIA HIGHWAYPATROL and
California Highway Patrol
OFFICER J. SCHATMEIER